662 P.2d 1040

**FED MART, Petitioner-Employer,**

**Insurance Company of North America, Petitioner-Carrier,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Dorothy Yoshimoto, Respondent-Employee.**

**1 CA–IC 2672.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 28, 1982.

Rehearing Denied March 4, 1983.

Review Denied March 29, 1983.

00:16534

Moore & Long by Joseph L. Moore, Phoenix, for petitioners.

James A. Overholt, Acting Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Ely, Bettini & Ulman by Judy C. Bishop, Phoenix, for respondent-employee.

## OPINION

JACOBSON, Presiding Judge.

The basic issue on this review of an award of the Industrial Commission is whether the carrier had sufficient notice of and therefore was estopped to deny liability for an injury occurring after the initial injury which formed the basis of claimant's industrial claim.

On February 9, 1979, the claimant-respondent, Dorothy Yoshimoto, sustained an injury to her head and neck when boxes fell on her while working in the dairy/deli cooler of petitioner-employer, Fed Mart. The physician's initial report of injury described an acute traumatic injury to the neck and head. The claim for this injury was accepted for medical and compensation benefits by the petitioner-carrier, Insurance Company of North America (INA).

On March 12, 1979, INA issued a notice of claim status changing the claimant's benefit status to temporary partial based upon the claimant's return to work. On April 16, 1979, INA received a "Physician's Initial Report" authored by Dr. Lawrence Green, which reported that the claimant was suffering from low back pain with numbness

in the right buttock and listed the cause of this pain as "probable L 3–4 disc syndrome". This report related this problem to the February 9, 1979 incident which was described in the report as "Dairy cooler boxes fell on my head—twisted my neck and gave me a concussion." Attached to the report was a letter from Dr. Green relating the history of the February 9, 1979 incident and also noted that "About two weeks ago she began lifting heavier items and was lifting on April 3, 1979 at work doing her usual job when she developed pain in the lower back...."

Based upon this report, INA restored the claimant to temporary total compensation benefits. On July 17, 1980, INA, based upon a group consultation report, issued a Notice of Claim Status terminating temporary benefits and concluding that the February 9, 1979 injury had resulted in no permanent disability. This notice was timely protested and hearings ensued.

At the hearings, Drs. Thomas Taber and Gerald Moczynski testified that the claimant's condition became stationary on July 7, 1980, with no objective evidence of impairment related to the February 9, 1979 injury. They also testified that the claimant's loss of motion in her lower back was not related to her February 9, 1979 neck injury, but was, perhaps, the result of osteoarthritis.

Dr. Green, who testified on behalf of the claimant, found a ten percent permanent disability, related solely to her lower back. His testimony in this regard was:

Q. All right. And on that first date, did her history relate to a cervical kind of injury, among other things?

A. On February the 9th, 1979, while at work, boxes fell on her head, and she was seen by Dr. Kamsey (phonetic) on the same date; admitted to Phoenix Baptist Hospital, with concussion and soft tissue injury to the neck.

On March the 12th, 1979, she was able to return to her previous occupation and was restricted to light work and for only 12 hours the first week.

Now, I saw the patient April the 16th when she told me she had a lifting injury of April the 3rd, 1979.

Q. Oh. So, that's a separate injury.

A. That was a separate injury, to the best of my knowledge.

Q. So the opinions that you have expressed have to do with the separate lifting injuries she sustained after February 9 of 1979.

A. That is correct.

Q. All right.

A. My impairment was related to the lower back rather than to the neck.

The Administrative Law Judge by his original award, found claimant's condition stationary, granted benefits through September 18, 1980, found a permanent partial disability and awarded "supportive" benefits from September 18, 1980 until such time as the claimant no longer needed supportive care.

Following this award, INA filed a request for review, arguing that Dr. Green's medical testimony related to a new injury occurring in April, 1979, and that since INA had no notice of this injury and no claims had been filed relating to this injury, the Commission lacked jurisdiction to award benefits based upon an April, 1979 injury. In response to this argument, the Administrative Law Judge issued an amended award, which in pertinent part found:

(3) ... The undersigned further finds that the defendant insurance carrier authorized and paid for medical examinations, hospitalizations, and other treatment for both cervical and lumbar complaints under this single claim until benefits were terminated in July, 1980, and at no time took action to deny lumbar symptomatology but rather chose to treat that problem as a continuation of and part of the February 9, 1979, claim and therefore, the lumbar complaints are included within the industrial injury.

The petitioners have sought review of this award. While petitioners have raised

issues concerning the evidence to support a "temporary stationary date" as found by the Administrative Law Judge and the evidence to support a "supportive care" award, the main thrust of their argument on review deals with the propriety of awarding benefits based upon an alleged industrial injury occurring in April, 1979. The argument in this regard is two-pronged: (1) That since Dr. Green's testimony causally relates claimant's condition to an event occurring in April, 1979, the Administrative Law Judge's award finding permanent impairment causally related to the February 9, 1979, industrial injury, is unsupported by the medical evidence; and (2) without a new claim being filed relative to the April, 1979 incident, the Commission lacked jurisdiction to award benefits relative thereto.

Both of these arguments have the same genesis—that petitioners had no meaningful notice that the claimant's permanent disability was related to an industrial injury other than the incident of February 9, 1979. The claimant's response is that meaningful notice was supplied by the April 16, 1979 report prepared by Dr. Green; and that since based upon that report, INA reinstituted temporary permanent benefits and paid for "low back" treatment, under principles of both *res judicata* and estoppel, INA cannot now deny benefits.

■ The black letter law in this area is reasonably clear. The jurisdiction of the Industrial Commission can only be invoked through compliance with statutory procedures and that in order for the Commission to obtain jurisdiction over a particular incident or claim, a formal application for benefits must be filed. *Sun Control Tile Co. v. Industrial Commission,* 117 Ariz. 268, 571 P.2d 1064 (App.1977); *Young v. Industrial Commission,* 19 Ariz.App. 304, 506 P.2d 1089 (1973); A.R.S. §§ 23–947 and 1061(A).

While the claimant argues that this general rule is not applicable because the principles of estoppel and *res judicata,* the ap-

plication of both of these principles have their basis in an underlying assertion—that the "Physician's Initial Report" filed on April 16, 1979, gave INA notice of a new injury occurring on April 3, 1979 to a different part of her body than that affected by the February 9, 1979 incident. The estoppel theory is that INA having received such notice, continued to pay benefits related to the April injury and not having denied liability for the low back symptomatology, INA is now estopped to deny liability for that injury. The *res judicata* argument is in a like vein. The argument being that since INA had notice of the new injury by the April 16, 1979 report and having issued a Notice of Claim Status restoring claimant to temporary total disability based upon that report, principles of *res judicata* preclude INA from now denying industrial responsibility for the April, 1979 injury.

■ In this case, we do not need to determine whether principles of estoppel might preclude a carrier from raising the claimant's failure to comply with A.R.S. § 23–1061(A), for we find the April 16, 1979 report does not provide the notice asserted by the claimant. The report on its face relates Dr. Green's treatment for the February 9, 1979, incident and describes the mechanics of that incident. It is only in the accompanying letter that the lifting incident of April 3, 1979 is mentioned. This is after a historical recitation of the February 9, 1979 injury. Moreover, the report concerns itself with symptoms consistent with the February 9, 1979 neck injury. ("Neck range of motion is extension 40° and flexion 40° both of which cause pain at the back of her neck.") Also, the report refers to X-rays showing a "degenerative disc disease of the upper lumbar spine."

In short, the clear up-front representation that Dr. Green's treatment and diagnosis were related to the February 9, 1979 neck injury incident does not provide the notice that his treatment was in fact related to a subsequent industrial injury at least

for the purposes of constituting a "new injury claim" under A.R.S. § 23–1061(A) [1].

We likewise hold that since *res judicata* is concerned with prior litigation of issues or issues which could be litigated, the Notice of Claim Status issued in reliance upon the April 26, 1979 report does not put in issue the compensability of the April 3, 1979 industrial injury.

In this case, the Commission's Administrative Law Judge awarded benefits related to an industrial incident for which a claim had never been filed.

Under the facts presented here, the Commission lacked jurisdiction over that industrial incident.

The award is set aside.

CONTRERAS and BROOKS, JJ., concur.

1. We do not determine, as the issue is not before us nor has it been presented to the Commission, whether sufficient notice was imputed by the April 16, 1979 report, so as to estop INA from claiming the untimeliness of any claim pertaining to the April 3, 1979 incident. *See, Van Horn v. Industrial Commission,* 111 Ariz. 237, 527 P.2d 282 (1974).