683 P.2d 1173

**Bruce W. NOBLE, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Midwestern Distribution, Inc., Respondent Employer,**

**Excalibur Insurance Company, Respondent Carrier.**

No. 1 CA–IC 3045.

Court of Appeals of Arizona, Division 1, Department B.

April 24, 1984.

Review Denied June 26, 1984.

**572**

Law Offices of Richard E. Taylor by Don F. Schaar, Phoenix, for petitioner.

Sandra Day, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca by Merton E. Marks, R. Kent Klein, and Stephen M. Bressler, Phoenix, for respondent employer and respondent carrier.

## OPINION

GREER, Judge.

Two issues are presented in this appeal by the petitioner claimant: First, whether

the Industrial Commission's entry of an award for a compensable claim precludes a subsequent denial of liability for a certain injury, under the doctrine of *res judicata;* second, whether the Administrative Law Judge erred in evaluating the evidence. We hold that *res judicata* did not preclude the denial of liability in this case, and that the judge did not err in evaluating the evidence, and therefore affirm.

On November 25, 1981, the claimant, a truck driver, was sleeping in the sleeper unit of a semi-trailer, when the driver hit a tire in the road and lost control of the truck. The truck ran into a ditch and the claimant was jostled around the cab. Claimant suffered a back injury, along with various scrapes and bruises. The following day, claimant came under the care of Dr. Gear, a chiropractor.

On February 7, 1982, the claimant suffered a cerebral hemorrhage, and underwent surgery the following day.

On May 12, 1982, claimant filled out a report of his injury and made a claim for workmen's compensation.[1] He reported his injury as "fractured vertebra in spine, bruises on head & arms & sides & hips." He made no mention of a claim for the cerebral hemorrhage. Following the claim, the Industrial Commission wrote to the claimant's doctors, including those who treated his cerebral hemorrhage, requesting them to submit bills to be included in the payment of petitioner's award.

On June 21, 1982, the Industrial Commission issued its Findings and Award For Compensable Claim. The award stated, in part:

1. That the above named applicant sustained a personal injury by accident arising out of and in the course of his employment with the above named defendant employer on November 25, 1981, and such injury is hereby found compensable.

.    .    .    .    ·.

1. The claim was initially processed as a "no insurance claim," and therefore the Commis-

sion's Special Fund was acting as carrier.

NOW, THEREFORE, IT IS ORDERED that the defendant employer is liable to the special fund for medical, surgical, hospital and compensation benefits as may be determined by the Commission.

The award further required any party who disagreed with it to request a hearing within 90 days. Neither party requested a hearing.

In the summer of 1982, the claimant contacted the Industrial Commission seeking a change of doctor, for the purposes of receiving better care and obtaining a scalp plate to protect the area previously operated on after the cerebral hemorrhage. In response, the Industrial Commission arranged a consultation with the Southwest Disability Evaluation Center. After the consultation, on September 21, 1982, the group wrote to the Industrial Commission, stating, in part:

> The intracerebral hemorrhage, which occurred in February 1982, appears from the review of the records, to have been caused by rupture of an arteriovenous malformation in the right temporal area. It is difficult to see the relationship of this to the industrial injury of November 1981.

On October 6, 1982, the Industrial Commission paid all of petitioner's medical bills. The following day, an Industrial Commission interoffice memo noted, "[w]e should be denying the intracerebral hemorrhage as indicated by group consultation ..." On October 19, 1982, the Industrial Commission sent letters to the medical personnel who had treated the hemorrhage, stating that their bills had been paid in error and requesting reimbursement.

On November 3, 1982, the Industrial Commission entered a Record of Commission's Action denying liability for the intracerebral hemorrhage condition. Claimant timely protested on the ground that *res judicata* precluded the Industrial Commission from denying liability. Prior to the hearings, claimant's counsel requested the A.L.J. to restrict the hearing to the jurisdictional issue. The A.L.J. informed claimant's counsel that the payment of medical benefits does not preclude a subsequent determination that a certain injury is not causally related to the industrial injury, *Whitley v. Industrial Commission*, 15 Ariz.App. 476, 489 P.2d 734 (1971), and that hearings would be held on the merits of the causation issue.

At the hearings, Dr. Gear testified that the hemorrhage was related to claimant's industrial accident, due to stress-related elevated blood pressure levels. However, Dr. Gear also admitted that he only took claimant's blood pressure once, the day after the accident, and that the blood pressure reading was normal. Dr. Kelley, one of the group consultants, and a neurosurgeon, testified that the hemorrhage was not causally related to the accident; it was due to an arteriovenous malformation, which is a cogenital condition. Dr. Kelley also testified that the only way to diagnose elevated blood pressure is from a blood pressure reading, and not from demeanor or behavior.

On April 26, 1983, the hearing judge issued his Decision Upon Hearing and Findings. The judge affirmed the order denying liability, finding that Dr. Gear's opinion was not supported by medical findings, that Dr. Kelley was more persuasive, and that the hemorrhage "was not caused, aggravated or precipitated by the subject industrial episode." The decision was affirmed on review, on June 22, 1983.

On appeal, claimant argues that because the 90-day protest period passed without complaint from the Special Fund, the Commission's entry of its initial award for a compensable claim precluded the later decision denying liability for the hemorrhage, under the doctrine of *res judicata*. He reasons that the initial award must determine that all his injuries were caused by the industrial accident, because entry of an award which does not decide this medical causation is meaningless. Respondents argue that the initial award determines only whether the injury arose out of the employment, and not whether the injury was caused by the accident. Respondents cite the initial award's language, "benefits as

may be determined by the Commission," to support their argument.

■ *Res judicata* is concerned with issues previously litigated or issues which could have been litigated. *Fed Mart v. Industrial Commission*, 135 Ariz. 533, 662 P.2d 1040 (App.1982). The doctrine binds the same parties standing in the same capacity in subsequent litigation as to issues which would have been decided in the prior litigation. *Vance v. Vance*, 124 Ariz. 1, 601 P.2d 605 (1979). Although it is by no means clear that respondents' above-quoted language supports their position, it is clear that the initial award could not have determined the issue of causation with which we are concerned in this case.

■ A finding of compensability requires proof by the claimant that he has sustained an injury which is causally related to the industrial incident. A.R.S. § 23–1021(A); *Yates v. Industrial Commission*, 116 Ariz. 125, 568 P.2d 432 (App.1977). Proving this causal relation involves a determination that the accident arose out of and in the course of the employment, as well as some determination of medical causation, i.e., that the accident caused "an injury." However, if the result of the accident is not clearly apparent to the layman, this medical causal relation must be proven by competent medical evidence. *Spears v. Industrial Commission*, 20 Ariz.App. 406, 513 P.2d 695 (1973).

■ In this case, there is no dispute that claimant's back injury resulted from the industrial accident, and we assume that the Commission must necessarily have so determined. Clearly, claimant identified his injury on his own report as fractured vertebra, and the Commission accepted the claim on this basis. He made no claim for the hemorrhage, and the Commission cannot be held to have accepted a claim for an injury not claimed by the employee.[2] Therefore, the finding of a compensable claim must have been predicated on the back injury.

The relationship between the industrial accident and the hemorrhage was one not clearly apparent to the layman. This causation issue required medical testimony or evidence and could not have been conclusively decided in the initial award. The hearing judge properly held hearings to determine this issue, and claimant failed to prove causation at that time.

■ We hold that the initial award finding a compensable claim did not decide the issue of whether the hemorrhage was causally related to the industrial accident, since claimant did not claim for the hemorrhage and since that issue required medical evidence. Therefore, *res judicata* did not apply to preclude the later determination that this causation did not exist.

■ Claimant argues that he failed to claim for the hemorrhage because he relied on a Commission spokesperson's oral representations that the hemorrhage would be covered. This is not supported by the record. During claimant's testimony, the following exchange took place:

Q. In your conversations with Pat Axford leading up to a June 21, 1982 award; did she make it clear to you that the surgery on the brain was covered by that award?

MR. OVERHOLT: Excuse me, Mr. Noble.

Before Mr. Noble answers that, Judge, I'd like to render an objection to that question and to this continuing line of questioning concerning the administrative processing of this claim.

My position is that it's not relevant to the issue of whether it's medically causally related to the industrial injury.

JUDGE SINGER: Sustained.

In any event, claimant cannot argue that his alleged reliance on an oral statement prejudiced him, because notwithstanding his failure to claim for the hemorrhage, he had full opportunity to litigate this claim at the hearings.

*Van Sickle v. Industrial Commission*, 121 Ariz. 115, 588 P.2d 857 (App.1978).

---

2. In fact, the Industrial Commission is without jurisdiction to consider a particular injury in the absence of a formal claim for that injury.

■ Finally, the evidence supports the judge's findings that the hemorrhage was not causally related to the industrial accident. The judge resolves conflicts in medical evidence, and his resolution will not be disturbed unless it is wholly unreasonable. *Ortega v. Industrial Commission*, 121 Ariz. 554, 592 P.2d 388 (App.1979). In this case, Dr. Kelley testified that the hemorrhage was not causally related; his testimony was based upon medical findings, and not mere speculation. The finding of no causation was not unreasonable.

For the foregoing reasons the award is affirmed.

MEYERSON, P.J., and FROEB, J., concur.