783 P.2d 1216

**David KOLLASCH, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Department of Public Safety, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 89–013.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 14, 1989.

Ronald M. Meitz, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by J. Victor Stoffa, Phoenix, for respondents Employer & Carrier.

CONTRERAS, Presiding Judge.

This is a special action review of an Industrial Commission award terminating temporary benefits without permanent impairment related to the industrial injury. One legal issue is presented: whether acceptance of reopening for a mental condition initially diagnosed as a major depression with mild paranoia but subsequently diagnosed as bipolar disorder (manic/depressive illness) is res judicata and therefore precludes termination of liability based on a subsequent medical opinion that the cause of bipolar disorder is exclusively genetic and is not industrially related. We conclude res judicata does not bar the later termination of benefits. Accordingly, we affirm the award.

Petitioner employee (claimant) was employed by the respondent employer (DPS) as a patrolman. In May, 1980, claimant suffered a compensable lower back injury. In April, 1982, this claim was closed without permanent impairment with a release to return to regular work. Following his release, claimant did not resume patrol duty but performed full-time office work for DPS.

In November, 1982, claimant saw his treating neurosurgeon, John J. Kelley, M.D., who reported that the back condition was unchanged but that claimant

> has had increasing problems with mood swings, periods of depression and recurrent nightmares, indecisiveness, temper outbursts, impaired sleep pattern and intermittent alcohol excess.
>
> In the past few days his behavior has been somewhat irrational at times when he has appeared to be out of contact with his environment. He has expressed some mild paranoid ideation and has been subject to some phobias, fears of being alone, etc. There has been no specific suicidal ideation. He is admitted at this time for observation and psychiatric evaluation.

During this hospitalization, claimant was evaluated by a psychiatrist and a psychologist, both of whom prepared written reports. The psychiatrist, Houshang Semino, M.D., tentatively diagnosed a major depressive illness with paranoid features related in part to the industrial injury and resulting inability to work as a patrolman.

On November 18, 1982, claimant *pro se* filed a petition to reopen for an unspecified condition and supported it with Dr. Kelley's November report. Respondent carrier (SCF) timely denied this petition. *See generally* A.R.S. § 23–1061(I)(requiring acceptance or denial within twenty-one days after receiving notification of petition).

Claimant continued to see Dr. Semino for psychotherapy. In early February, 1983, Dr. Semino reported that DPS had planned to return claimant to patrol work by the end of January, 1983, but that "during a scheduled appointment, [claimant] ... came to my office and he stated that he had resigned from his position. He, also, stated that he felt he could no longer see mutilated bodies nor perform his other duties as a police officer." Dr. Semino also, with qualification, indicated that when hospitalized in November, 1982, claimant "was found to have a depressive illness with paranoid features ..." and again concluded that the industrial injury precipitated this condition "[d]espite such predisposing factors as a family history of paranoia."

In June, 1983, psychiatrist Stuart M. Gould, Jr., M.D., evaluated claimant at the request of SCF. He agreed with Dr. Semino's assessment that claimant had suffered a "severe depression with paranoid features" and diagnosed a "[m]ajor affective disorder, with severe depression, which is now currently largely in remission." He also agreed with Dr. Semino that claimant's "depression and paranoid symptoms would not have developed had he not had the employment, injury on the job and the subsequent disability." Finally, although Dr. Gould did not think the psychiatric condition was yet stationary and recommended psychotherapy until claimant returned to regular work, he did not anticipate any permanent impairment and predicted "the prognosis is good for future function and freedom from disabling psychiatric symptoms." Based on Dr. Gould's report, the SCF rescinded the prior denial and issued a notice of claim status accepting the petition to reopen.

In March, 1984, claimant was again hospitalized for an acute psychotic episode. In July, 1984, Dr. Semino reported to the SCF that the stress which claimant had experienced seeking new employment had precipated the hospitalization. He also reported, apparently for the first time, that a "diagnosis of Bipolar Disorder was established" and that lithium treatment had been instituted.

During the next two years, claimant suffered some five or six additional manic/psychotic breaks. The last of these occurred in July, 1986. Dr. Semino regularly reported to the SCF regarding claimant's condition.

In March, 1987, psychiatrist Eugene R. Almer, M.D., examined claimant at the request of SCF. Dr. Almer also diagnosed bipolar disorder. After reporting that he had discussed with claimant some of the reasons why workers' compensation coverage had been provided for this illness, Dr. Almer concluded that "sooner or later the truth would come home to roost, that truth namely being that this is not a Workmen's Compensation case and that his back injury of May 20, 1980, did not influence, cause, or aggravate his *genetic illness*, namely the manic-depressive disorder" (emphasis added). Relying on this report, the SCF issued its notice terminating benefits. Claimant protested, and hearings were scheduled. Pending these hearings, Dr. Gould reevaluated claimant.

At the hearings, claimant, his sister (a rehabilitation nurse personally and professionally involved in the case), and the three psychiatrists appeared. Because of the importance of the medical evidence, we focus on it.

The psychiatrists all agreed that claimant has a bipolar disorder and that, in retrospect, this illness became symptomatic in 1982. They also agreed that this illness is genetic and incurable. They disagreed, however, as to whether stress could precipitate or otherwise contribute to bipolar disorder. Drs. Semino and Gould testified that it could. Dr. Almer testified that it could not.

Regarding the original diagnosis of depression with paranoid features, Dr. Semino testified that the illness "could have been easily diagnosed for bipolar disorder even at that time [during the November, 1982, hospitalization]. But we need to realize that diagnosis in mental illness is different from physical illnesses. We are dealing with a field that is much more abstract." Dr. Semino further explained that the two conditions have symptoms in common and that their differentiation is based on the cycle of symptoms in bipolar disorder and the efficacy of treatment with lithium. Dr. Gould explained that it took time for the cycle to become manifest and that one break is insufficient evidence upon which to diagnose bipolar disorder. Finally, Dr. Almer testified that "when I saw him I had 20/20 vision. All of this hindsight of what had gone on over the years at that time, I might have had 2200 vision."

After receiving memoranda from the parties, the Administrative Law Judge issued the award. He expressly recognized in finding 10 that res judicata was in issue:

10. The questions to be determined were narrowed down, during the hearing process, to three main issues:

A. Was the defendant insurance carrier's NOTICE OF CLAIM STATUS issued June 20, 1983, accepting applicant's PETITION TO REOPEN filed on November 18, 1982, *res judicata as to defendant insurance carrier's liability for applicant's psychiatric problems?*

B. Was applicant medically stationary by April 4, 1987 with no permanent disability causally related to his May 20, 1980 industrial injury?

C. Did applicant have new, additional or previously undiscovered disability or condition causally related to his May 20, 1980 industrial injury as of November 9, 1987 when he filed his PETITION TO REOPEN? (Emphasis added)

The Administrative Law Judge resolved this issue and the conflicting medical opinions in the following findings:

12. Considering the evidence in its entirety, and the arguments advanced in the parties' POST HEARING MEMORANDA, the Undersigned finds that the evidence has established applicant was diagnosed by Dr. Semino as being depressed and mildly paranoid (major affective disorder). The diagnosis was changed, sometime around 1984, to bipolar illness (manic depressive illness). The evidence further established, by a reasonable preponderance, that the original diagnosis (prior to 1984) is a condition that can be improved with treatment and that can be affected by environmental factors. In contrast, the new diagnosis (after 1984), within a reasonable degree of medical probability, is not affected by environmental factors and is probably of genetic etiology.

13. Applicant's PETITION TO REOPEN was filed on November 18, 1982 and was ultimately accepted by the defendant insurance carrier on June 20, 1983, during the time the physicians and the defendant insurance carrier believed applicant to be suffering from a major affective disorder that could be treated

and cured, and one which would be affected by environmental factors such as the subject industrial injury. Benefits were paid until April 4, 1987 when applicant's temporary benefits were terminated with no permanent disability. By this time, the physicians had determined that applicant did not have a major affective disorder, but rather, was suffering from a manic depressive disorder. That while the physicians agree applicant does have a manic depressive disorder for which he needs treatment, the preponderance of the evidence is that said psychiatric disorder is not causally related to applicant's May 20, 1980 industrial injury.

After affirmance on administrative review, this special action followed.

On review, claimant concedes the sufficiency of Dr. Almer's opinion to support the award, but he argues that the SCF's acceptance of the petition to reopen filed on November 18, 1982, is res judicata as to SCF's liability for his psychiatric problems and precludes a subsquent termination based on an opinion that claimant's mental condition is unrelated to the industrial injury. We disagree.

Claimant maintains that the only difference between the original and subsequent diagnosis is that bipolar disorder is a more severe condition. He argues that for this reason, the SCF cannot now deny responsibility for claimant's mental disability after having accepted industrial responsibility for it.[1]

If severity were the only difference, preclusion might well apply. *Cf. Cajun Cable Co., Inc. v. Industrial Comm'n,* 156 Ariz. 590, 754 P.2d 317 (App.1987) (late protest unexcused because employer withheld timely protest not because of reliance on carrier representation but because of expectation of minimum liability). But it is not. The psychiatrists agreed that stress can causally contribute to depressive illness with paranoia. In contrast, they disagreed

---

1. Claimant has not argued that the SCF is precluded from denying responsibility for the bipolar disorder merely because it provided benefits after this condition was diagnosed. This court has consistently rejected the claim that the pay-

ment of benefits alone establishes liability for a condition. *See, e.g., Noble v. Industrial Comm'n,* 140 Ariz. 571, 683 P.2d 1173 (App. 1984).

whether stress could contribute to bipolar disorder. According to Dr. Almer, this disorder has an *exclusively* genetic origin. This difference is material for the purpose of preclusion. Acceptance of liability for one condition does not preclude denial of liability for another. *See, e.g., Kentucky Fried Chicken v. Industrial Comm'n*, 141 Ariz. 561, 688 P.2d 187 (App.1984) (acceptance of leg injury claim does not preclude denial of liability for aggravation of preexisting hip condition); *Noble v. Industrial Comm'n*, 140 Ariz. 571, 574, 683 P.2d 1173, 1176 (App.1984) (acceptance of claim for fractured vertebra does not preclude denial of coverage for cerebral hemorrhage). Claimant would restrict this principle to anatomically distinct conditions, but the current case illustrates that such restriction is too narrow. The different diagnoses for the same symptoms implicate materially different causes for the mental condition.

In this context, the SCF relies on reopening and rearrangement cases to support the inapplicability of res judicata. The former cases equate a newly diagnosed condition with a previously undiscovered condition. *See, e.g., Crocker v. Industrial Comm'n*, 124 Ariz. 566, 606 P.2d 417 (1980); *accord, e.g., Pascucci v. Industrial Comm'n*, 126 Ariz. 442, 616 P.2d 902 (App. 1980). The latter equate a change of condition with newly presented evidence of disability. *See Gallegos v. Industrial Comm'n*, 144 Ariz. 1, 695 P.2d 250 (1985). We also note that the supreme court has extended a similar theory to the statute of limitations for filing a claim. *See Henry v. Industrial Comm'n*, 157 Ariz. 67, 754 P.2d 1342 (1988) (although mental condition disabling and known to be related to work, condition of post-traumatic stress syndrome not manifest until actually diagnosed over twenty years after trauma).

We need not decide whether this authority fully applies to the current case.[2] The inapplicability of res judicata turns not simply on the new diagnosis, but rather on the exclusively genetic origin of bipolar disorder.[3] Claimant nevertheless asserts that principles of res judicata apply because the SCF could have litigated the causation issue at the time the petition for reopening was filed in November, 1982. We disagree.

Claimant primarily relies on Dr. Semino's testimony that bipolar disorder could have been easily diagnosed in November, 1982. The fact of the matter is that it was not. The SCF had obtained an independent opinion from Dr. Gould who agreed with Dr. Semino's diagnosis and his opinion regarding causation. Claimant would have us require the SCF to ignore this unanimity of expert opinion. A rule such as this arguably would sanction bad faith. Claimant also posits that the SCF could have obtained Dr. Almer's opinion in 1983 before accepting reopening, and since he did not examine claimant, SCF is bound to accept the consequences of the mental disability. This position is speculative, impractical, and unrealistic. It would also further encourage doctor shopping, a practice to be avoided. *See generally Tyree v. Industrial Comm'n*, 159 Ariz. 92, 764 P.2d 1151 (App.1988). Finally, we note that claimant's argument ignores the standard of review. The record established that the bipolar cycle was not yet manifest when reopening was accepted. This evidence supports the implied finding that the bipolar disorder could not have been diagnosed at that time.[4]

---

**2.** Although this case involves termination of an open claim, not a rearrangement, it is only a short procedural step to *Gallegos*. The SCF would merely close the claim for depressive illness with paranoia and then immediately petition to arrange for a "changed" condition (bipolar disorder) unrelated to the industrial injury. *See generally Church of Jesus Christ of Latter Day Saints v. Industrial Comm'n*, 150 Ariz. 495, 498 n. 2, 724 P.2d 581, 584 n. 2 (App.1986).

**3.** The SCF has broadly relied on the new diagnosis to litigate whether the industrial back injury contributed at all or contributed substantially when compared to other stresses. In our opinion, this line of defense involves a much closer question of preclusion.

**4.** The parties have not distinguished between claim and issue preclusion. *See generally, e.g., Western Cable v. Industrial Comm'n*, 144 Ariz. 514, 698 P.2d 759 (App.1985)(citing *Restatement (Second) of Judgments* (1982)). Claim preclusion is stronger than issue preclusion because the former prevents litigation both of matters that were actually litigated and ones that could

For the foregoing reasons, we conclude that res judicata was inapplicable and accordingly affirm the award.

SHELLEY and EHRLICH, JJ., concur.

have been litigated; the latter precludes relitigation only of matters that were actually litigat-

ed and determined and only if that determination was essential.