860 P.2d 1354

**Leonard C. ALDRICH, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Mars Steel & Iron, Respondent Employer,**

**Nationwide Mutual Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 92–0102.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 12, 1993.

---

Ronald M. Meitz, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Indust. Com'n of Arizona, Phoenix, for respondent.

Harry L. Howe, P.C. by Stuart J. Gerrich and Harry L. Howe, Scottsdale, for respondents Employer and Carrier.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of an Arizona Industrial Commission award denying compensability and alternatively awarding temporary partial disability benefits should this court conclude that the claim is compensable. We address two issues: (1) whether a carrier that opts to return the Commission's notification list with the designation "NTL" (meaning that this was a no time loss claim) may, over ninety days later, deny compensability to contest a claim for disability benefits; and (2) if not, whether this court may affirm the alternative finding. Because claim preclusion applies, and this court must affirm or set aside an award as a whole under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–951(D) (1983), we set aside the award.

Respondent employer, Mars Steel & Iron, a Colorado company, employed the Claimant as a sandblaster and painter on the Waddell Dam project.[1] On April 8, 1991, the Claimant sought treatment at a hospital emergency room for labored breathing (dyspnea) and wheezing, which he alleged had developed from exposure to bituminous materials and to oil leaks in the fresh air supply of the sandblasting equipment he had used at work since January 1991. He, however, also provided a history of previously smoking two packs of cigarettes a day and of currently smoking a half a pack a day.

The treating doctor diagnosed possible chronic obstructive pulmonary disease, recommended further treatment, including pulmonary function tests, and restricted the Claimant from returning to work. Although hospital personnel contemporaneously prepared a worker's and physician's report, this report was not filed with the Commission until August 5, 1991.

On April 22, 1991, the Claimant prepared and filed a worker's report of injury.[2] This report included the history of oil leaks and indicated that the Claimant had stopped work on April 18, 1991.[3]

The Commission processed this worker's report of injury and provided Mars' compensation carrier, Nationwide Mutual Insurance Company, notice of the claim on April 26, 1991. Nationwide responded by returning the Commission's notification list on May 13, 1991, with the designation "NTL." *See generally* Handbook § 9.4.1.3. It then paid Claimant's medical expenses, including those for continuing treatment of chronic obstructive pulmonary disease.

On August 2, 1991, the Claimant requested that the Commission investigate his entitlement to temporary disability benefits and to interest.[4] *See generally* A.R.S. § 23–1061(J). Nationwide responded by arguing that the Claimant did not have any loss of earning capacity because Mars had offered him suitable work in Colorado. The Commission then referred the case to an administrative law judge for hearings.

At the first hearing in December 1991, Nationwide denied not only that Claimant had a loss of earning capacity but also that he ever had a compensable claim. It took the position that cigarette smoking alone caused his respiratory condition. The administrative law judge initially precluded this second defense but subsequently requested memoranda addressing the preclusive effect of informally processing a claim by returning the Commission's notification list marked "NTL." After continued hearings for medical evidence, the parties submitted memoranda.

The administrative law judge then issued the award. He concluded that Nationwide could litigate compensability and that the Claimant had failed to prove that any exposure at work caused or aggravated his pulmonary disease. The dispositive legal finding states:

> *Claim Filing and Processing,* in Arizona Workers' Compensation Handbook § 9.3.2.1 (Ray J. Davis et al. eds. 1992) ("Handbook"). The latter does not include medical findings, diagnosis, or prognosis.

1. While working at Waddell Dam, the Claimant lived in a trailer that Mars provided at the job site and used general delivery in Wickenburg, Arizona, located some ten miles from the dam, as his mailing address. He previously had worked in Colorado, Idaho, and Nevada before working for Mars in Arizona. The administrative law judge also found that the Claimant permanently resided in Denver, Colorado, and intended to return to Colorado to work for Mars after the Waddell Dam project ended.

2. The worker's and physician's report and the worker's report are alternative forms for a claim for workers' compensation benefits. *See* Laura L. McGrory and R. Todd Lundmark,

3. Claimant did not disclose that Mars had terminated its operation at the dam on April 17, 1991.

4. The supreme court has since concluded that claimants may not recover interest on unliquidated claims. *DKI Corp. v. Industrial Comm'n,* 173 Ariz. 535, 536–37, 845 P.2d 461, 462–63 (1993).

An insurance carrier is not required to issue a formal notice of claim status in cases involving seven days or less of time lost from work. A.R.S. § 23–1061(F) and (M). Further, pursuant to A.R.S. § 23–947, subsections A and B, the statutory imposition of the legal doctrine of *res judicata* does not apply unless a notice is sent under the provisions of § 23–1061(F). The legal doctrine of *res judicata* is concerned with issues previously litigated or issues which could have been litigated. *Noble v. Industrial Comm'n*, 140 Ariz. 571, 574, 683 P.2d 1173, 1176 (App.1984). Issue preclusion only precludes relitigation of the same issue. It applies only to matters that were actually litigated and determined and only if that determination was essential. *See Western Cable v. Industrial Comm'n*, 144 Ariz. 514, 518, 698 P.2d 759, 763 (App.1985). Additionally, payment of benefits alone does not establish liability for a condition. *Kollasch v. Industrial Comm'n*, 162 Ariz. 424 n. 1, 783 P.2d 1216 n. 1 (App.1989). In the present case, the undersigned concludes that *res judicata* does not apply because there was no formal notice of claim status issued by the carrier and for the concurrent reason the issue of compensability has never actually been litigated between the parties.

Despite this conclusion, the administrative law judge addressed Claimant's entitle- ment to temporary disability benefits "[i]n the event that this matter is appealed and the compensability portion of this decision is set aside by a reviewing court." He rejected the Claimant's argument that Wickenburg is the applicable labor market and awarded temporary partial disability benefits based upon work Mars offered to Claimant in Colorado.[5]

The Claimant requested review. Among several arguments, he contended that "the ALJ's Decision is directly contrary to the Arizona Industrial Commission's own policy. Attached is Exhibit A. This is the official written policy of the Commission which was published and distributed at the Industrial Commission Claims Seminar in 1991." The referenced exhibit states:

### NO TIME LOST CLAIMS

A. *Compensable* medical only claims may be *accepted* by either of the following methods:

1. Issuance of a Notice of Claim Status (Form 104).

2. Return of the Industrial Commission's Notification List, identifying those claims *accepted* as *medical only* using the initials, "NTL" or "M/O".....

The Notification List is *not* to be used for ... denials [or] accepted "time loss" claims.... It is for the *sole*

---

**5.** The relevant findings state:

18. Under the rather unique circumstances of this case, the undersigned concludes that the exception to the general rule may be expanded in this case to find that Colorado is a proper labor market to use in determining entitlement to compensation. The record shows that applicant worked in Idaho, Nevada, and Colorado prior to working at the Waddell Dam job site. The undersigned accepts Ms. Mier's testimony to the effect that applicant was offered continuing work with the defendant employer in Colorado when the Waddell Dam project was completed. It is further found that applicant initially intended to continue this employment with the defendant employer in Colorado after the Waddell Dam project was completed. Further, the evidence in this case shows that applicant consistently listed a Denver, Colorado address as his home address. Moreover, the only rea- son applicant was residing in the Wickenburg area on the date of the alleged injury was because of the location of the job site and because the employer provided applicant a trailer in which to live. If one were to extend applicant's argument to its logical conclusion, a worker employed at a remote job site far from any town or city, could claim the job site as an applicable labor market by the mere fact he was residing at the job site when injured.

19. Based upon the foregoing, it is found that there was suitable work reasonably available to applicant from the defendant employer in the Denver, Colorado, area at the time of the alleged industrial injury. This work paid $10.00 per hour and applicant's entitlement to temporary partial disability compensation should be measured against his ability to earn $10.00 per hour with the defendant employer.

*purpose* of identifying those claims *accepted as medical only.*

B. Termination of Temporary Benefits

1. If accepted by Form 104, closure must be by such notice.

2. If *accepted* without benefit of Form 104, *the claim remains open unless formally closed* with Form 104.

(Italics added.)

■ In its response, Nationwide did not object to this exhibit but rather argued that it "does *not* address the issue of when or whether compensability can be litigated later." [6] The administrative law judge summarily affirmed the award without mentioning the Claimant's exhibit to his request for review.[7] The Claimant then brought this special action.

■ On review, Claimant asserts that Nationwide accepted his claim when it returned the Commission's notification list with the designation "NTL" and that compensability is *res judicata* once a carrier's acceptance becomes final.[8] From these premises, Claimant concludes that Nationwide was precluded from denying the compensability of his chronic obstructive pulmonary disease to contest his claim for temporary disability benefits.

Nationwide answers by defending the administrative law judge's conclusion that preclusion does not apply to informal claim

processing. It also extends this analysis by denying that informal claim processing constitutes an acceptance of a claim.

We first address whether a carrier accepts a claim by returning the Commission's notification list with the designation "NTL." Under A.R.S. section 23–1061(F), a carrier must issue a notice of claim status to deny a claim or to change or terminate the amount of compensation, "except that claims for medical, surgical and hospital benefits *which are not denied* shall be reported to the commission in the form and manner determined by the commission." (emphasis added). Nationwide argues that this language permits a carrier to "not deny" a no time loss claim without accepting it. We disagree.

■ The notification list procedure is "the form and manner determined by the commission" for processing no time loss claims. *See* 1991 Industrial Commission Claims Seminar Manual; *see also* 1990 Industrial Commission Procedures Manual, Handbook app. B. The Commission's procedures clearly state that á carrier has alternative means for *accepting the compensability* of no time loss claims: either issue a formal notice or return the notification list with the specified notation (either "NTL" or "M/O"). Assuming *arguendo* that A.R.S. section 23–1061(F) is unclear, the Commission's procedures clearly specify that informal processing of a no time loss claim constitutes an acceptance of its compensability.

**6.** Nationwide also contended that it had notified Claimant that it would dispute compensability when it answered interrogatories on October 22, 1991 and appended an answer stating that it might assert the "[affirmative] defense of no causation." The administrative law judge, however, excluded from the record the appendix to Nationwide's response.

**7.** Evidence is necessary concerning no time loss claim processing. *See Ball Mfg. v. Industrial Comm'n,* 171 Ariz. 26, 33, 827 P.2d 487, 494 (1992). As a general rule, evidence is inadmissible on administrative review. *See, e.g., Southwest Nurseries v. Industrial Comm'n,* 133 Ariz. 171, 173, 650 P.2d 473, 475 (App.1982). An objection to admissibility, however, is waived unless timely asserted below. *See, e.g., Shell Oil*

*Co. v. Gutierrez,* 119 Ariz. 426, 437, 581 P.2d 271, 282 (App.1978). We accordingly consider Claimant's exhibit as part of the record in this review.

**8.** A carrier, of course, may rescind a notice of claim status accepting compensability within ninety days of issuing it. *See Church of Jesus Christ of Latter Day Saints v. Industrial Comm'n,* 150 Ariz. 495, 498, 724 P.2d 581, 584 (App.1986). We assume without deciding that Nationwide had a parallel right to rescind its informal acceptance of the no time loss claim. It, however, did not deny compensability within ninety days and in fact has never issued a notice rescinding its informal acceptance of Claimant's claim.

■ We give great weight to an administrative agency's interpretation of the statutes it is responsible for implementing. *E.g., Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped,* 150 Ariz. 50, 58, 721 P.2d 1177, 1185 (App.1986). Nationwide contends, however, that this interpretation conflicts with A.R.S. section 23–1061(M). This section imposes a penalty if a carrier fails to deny a claim within twenty-one days of receiving notice of it from the Commission, but this penalty does not apply to "cases involving seven days or less of time lost from work." A.R.S. § 23–1061(M). Such cases are no time loss claims. *See* A.R.S. § 23–1062(B).

In our opinion, this immunity allows a carrier to deny a no time loss claim after twenty-one days without penalty; it does not allow it first to accept a no time loss claim and then to deny it more than ninety days later. The immunity from penalty does not immunize a carrier from the application of the principles of *res judicata.* We accordingly find no conflict between A.R.S. section 23–1061(M) and the Commission's interpretation of section 23–1061(F) and adopt this interpretation of section 23–1061(F). Informal claim processing of a no time loss claim constitutes an acceptance of its compensability.

■ Having concluded that Nationwide accepted Claimant's claim when it returned the Commission's notification list with the designation "NTL," we next address whether this acceptance precluded Nationwide from denying compensability over ninety days later at a subsequent claim stage. We agree with the Claimant that final acceptance of a claim, whether formally or informally, triggers claim preclusion.

■ Nationwide argues that A.R.S. section 23–947 restricts preclusion to formal acceptances. This section provides that unless enumerated excuses apply, "[f]ailure to file [a hearing request] with the commission within the required ninety days ...

means that the determination ... is *final and res judicata* to all parties." A.R.S. § 23–947(B) (Supp.1992) (emphasis added).

Although this section includes a refer-. ence to *res judicata,* we disagree that the legislature intended to restrict preclusion to formal acceptances when it added the quoted language to the statute. Rather, the purpose of the 1980 amendment was to abrogate case law that had broadly authorized the Commission to excuse untimely hearing requests. *E.g., Epstein v. Industrial Comm'n,* 154 Ariz. 189, 192–93, 741 P.2d 322, 325–26 (App.1987); *see also* Thomas M. Gordon and Melinda K. Poppe, *Reopening, Rearrangement, and Settlement,* in Handbook § 11.2.5.1. This statutory restriction of the excuses for untimely hearing requests does not imply that preclusion applies only to unexcused untimely hearing requests.

Nationwide also argues that restricting preclusion to final notices of claim status "has the salutary effect of allowing Claimants ... to get medical benefits (even if not so entitled) and yet preserve the ... right to contest any issue pursuant to an A.R.S. § 23–1061(J) petition." This argument may have superficial appeal in the current case, in which Nationwide delayed asserting its defense of no medical causation only a few months, but no time loss claims may lie dormant for years and compensability defenses may include denials that an injury occurred as alleged or that it arose out of and in the course of employment. To avoid the practical difficulties of litigating the question of compensability years after an alleged industrial injury, we conclude that preclusion must apply to informal acceptances of no time loss claims.

■ Issue preclusion applies only if an issue was previously litigated. *E.g., Western Cable v. Industrial Comm'n,* 144 Ariz. 514, 518, 698 P.2d 759, 763 (App.1985); *see also* Gordon &· Poppe, *supra,* Handbook § 11.2. Claim preclusion, on the other hand, applies to issues that could have been litigated.. *Western Cable,* 144 Ariz. at 518,

698 P.2d at 763; *see also* Gordon and Poppe, *supra,* Handbook § 11.2. Compensability issues include whether a work-related accident caused some injury causing some disability or necessitating some medical treatment. *See Noble v. Industrial Comm'n,* 140 Ariz. 571, 574, 683 P.2d 1173, 1176 (App.1984). Unless apparent to a layman, medical evidence is necessary to establish these elements of a compensable claim. *E.g., id.* at 574, 683 P.2d at 1176.

Although Nationwide correctly denies that any compensability issue was previously litigated, it incorrectly denies that compensability could have been litigated. To the contrary, Nationwide could have litigated compensability by issuing a notice of claim status denying the claim. It instead opted to accept Claimant's claim by returning the Commission's notification list with the designation "NTL." Claim preclusion therefore applies and "the elements of a compensable claim may not be relitigated at a subsequent claim stage." Gordon and Poppe, *supra,* Handbook § 11.4.2.

Nationwide did relitigate the elements of compensability at the subsequent hearing on temporary disability by denying that a work-related exposure caused even a temporary aggravation of Claimant's chronic obstructive pulmonary disease. The administrative law judge erroneously accepted this defense and found that Claimant failed to prove that his work ever contributed to his chronic obstructive pulmonary disease. We accordingly reject the part of the award denying compensability.[9]

■ We turn finally to the administrative law judge's alternative finding. Although the parties address the merits of this finding, we must independently determine if we have jurisdiction to address the alternative finding. *See, e.g., Musa v. Adrian,* 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981). Our statutory power to review Commission.awards is limited to "affirming or setting aside the award...." A.R.S. § 23–951(D). We historically have interpreted this limitation to require affirming or setting aside an award as a whole. *See, e.g., Arrowhead Press, Inc. v. Industrial Comm'n,* 134 Ariz. 21, 25, 653 P.2d 371, 375 (App.1982) (Contreras, C.J., specially concurring) (applying rule but urging legislative revision). Having concluded that the part of the award denying compensability must be set aside, we must set aside the award as a whole.

EHRLICH, P.J., and CONTRERAS, J., concur.

---

**9.** We note that Claimant also contends that claim preclusion bars Nationwide from establishing that any work-related exposure at most temporarily aggravated chronic obstructive pulmonary disease related to Claimant's cigarette smoking. Our conclusion that Nationwide could not deny even a temporary aggravation does not imply that we accept Claimant's argument that it cannot claim that the aggravation was temporary. *Cf. Arellano v. Industrial Comm'n,* 25 Ariz.App. 598, 600–04, 545 P.2d 446, 448–52 (1976) (accepting compensability of back strain superimposed on unrelated degenerative arthritis does not preclude subsequent termination for temporary aggravation even if similar symptoms continue).