NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

JERRY DRAKE, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

ARIZONA CARDINALS, *Respondent Employer*,

ZENITH INSURANCE CO./BROADSPIRE INC., FAIRMONT PREMIER
INSURANCE CO., *Respondent Carrier*.

No. 1 CA-IC 16-0008
FILED 12-22-2016

_____

Special Action – Industrial Commission
ICA Claim Nos. 20003-140509, 95237-779674
97280-178238, 98051-242177, 98344-393900
Carrier Claim Nos. 187481508, 187481520-001
A9511282, A98013058, B00104995
The Honorable Allen B. Shayo, Administrative Law Judge

**AWARD AFFIRMED**

_____

COUNSEL

J. Wayne Turley PC, Lehi, Utah
By J. Wayne Turley
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark, Barberich, La Mont & Slavin PC, Phoenix
By R. Todd Lundmark
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco joined.

---

**S W A N N**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying reopening and awarding supportive care.  On appeal, the petitioner employee ("claimant") argues that the administrative law judge ("ALJ") erred by failing to reopen his claims.  Because we find that the evidence of record supports the award, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        From 1995 to 2000, the claimant was a defensive lineman for the respondent employer, Arizona Cardinals ("Arizona").  He sustained a variety of injuries during this period, five of which are at issue here.  The claimant filed petitions to reopen his July 29, 1995 and November 4, 1997 right shoulder injuries, his August 2, 1997 cervical injury, his September 6, 1998 lumbar injury, and his August 18, 2000 right-knee injury.  The claimant also asserted that the deterioration of these injuries had caused him to suffer from associated psychological injuries.

**¶3**        The respondent carrier, Zenith Insurance Company ("Zenith"), through its claims manager, denied all five petitions to reopen. The claimant timely protested, and the ICA scheduled hearings.  Seven months after the ICA hearings commenced, the claimant filed two additional claims for cumulative trauma injuries, but the ALJ declined to combine them with the hearings already in progress.

2

¶4	The ALJ held seven ICA hearings and heard testimony from the claimant, four orthopedic surgeons, and two psychologists. He then entered an award denying the petitions to reopen, but awarding supportive care for the claimant's cervical and lumbar spine injuries. The claimant timely requested administrative review, and the ALJ supplemented and affirmed the award. The claimant next brought this appeal. This court has jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A) and Arizona Rules of Procedure for Special Actions 10.

**DISCUSSION**

¶5	In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶6	To reopen a workers' compensation claim, the claimant must establish the existence of a new, additional, or previously undiscovered condition, and a causal relationship between that condition and the earlier industrial injury. *See* A.R.S. § 23-1061(H); *e.g.*, *Pascucci v. Indus. Comm'n,* 126 Ariz. 442, 444 (App. 1980). When the causal connection between the condition and the earlier industrial injury is not readily apparent, it must be established by expert medical testimony. *See Makinson v. Indus. Comm'n*, 134 Ariz. 246, 247–48 (App. 1982). It is the ALJ's duty to resolve all conflicts in the evidence. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975).

¶7	It is also necessary to establish comparison dates to determine whether the statutorily required change in condition has occurred. "In cases involving a first petition to reopen, the comparison points for establishing the necessary change of condition are the date the claim was closed and the date the petition to reopen was filed." *Cornelson v. Indus. Comm'n*, 199 Ariz. 269, 271, ¶ 14 (App. 2001). When the claimant has filed successive petitions to reopen, the comparison points for establishing a change in condition are the earlier final award and the date the subsequent petition to reopen was filed. *Phoenix Cotton Pickery v. Indus. Comm'n*, 120 Ariz. 137, 139 (App. 1978).

I.	RIGHT SHOULDER INJURIES

¶8	In July 1995, the claimant injured his right shoulder and filed a workers' compensation claim. The injury was described as "acute bursitis/cuffitis." His claim was accepted for benefits and closed with no

permanent impairment on September 12, 1995.  On November 4, 1997, the claimant again injured his right shoulder and filed a workers' compensation claim.  The injury was described as "degenerative changes without a definite tear to the rotator cuff."  His claim was accepted for benefits and closed with no permanent impairment on December 15, 1997.  The claimant petitioned to reopen both of these claims on May 22, 2014.[1]

**¶9**        The ALJ heard testimony regarding the claimant's right shoulder from orthopedic surgeons Scott Barbour, M.D., and Irwin Shapiro, M.D.  He resolved conflicts in the testimony in favor of Dr. Shapiro, due at least in part to Dr. Barbour's unfamiliarity with the claimant's 1995 and 1997 discharge diagnoses.[2]  It was Dr. Shapiro's opinion that the claimant had no new, additional, or previously undiscovered condition causally related to either his 1995 or 1997 injury.  Instead, the doctor testified that the claimant has a cumulative trauma injury caused by the years of performing repetitive activities necessary to prepare for and to play football.

> [W]e're dealing with a young man who has gone through high school football, college football, preparation for the draft, and his years with the Cardinals.  Repetitive liftings, repetitive overhead lifting, repetitive activities in the weight room, in my opinion, this is what has contributed to the progressive degeneration that we know has occurred with his rotator cuff rather than either of these isolated episodes.

Dr. Shapiro's testimony reasonably supports the ALJ's refusal to reopen the 1995 and 1997 claims.

## II.        CERVICAL INJURY

**¶10**        In late July or early August 1997, the claimant was struck in the left side of his head and neck causing a stretch injury with "left side weakness."  He filed a workers' compensation claim, which was accepted

---

[1]        The comparison dates for the 1995 injury are September 12, 1995, the date of the last closure, and May 22, 2014, the date the petition to reopen was filed.  The comparison dates for the 1997 injury are December 15, 1997, the date of the last closure, and May 22, 2014, the date the petition to reopen was filed.

[2]        Because Dr. Barbour was unaware of the condition of the right shoulder at the time of the 1995 and 1997 closures, he could not provide testimony as to a change in condition occurring between the requisite dates.

for benefits. The claimant was referred to Volker Sonntag, M.D., a neurosurgeon. On August 26, 1997, Dr. Sonntag performed a discectomy and fusion at C4-5 and C5-6. This claim then closed with no permanent impairment, and the claimant passed his post-season physical.

¶11 On April 12, 2004, the claimant filed his first petition to reopen his cervical claim. It was denied for benefits, but the parties entered into a compromise and settlement agreement to reopen the claim, award the claimant a 28% whole person impairment, and provide him a lump sum payment of $30,000. The claim was reclosed effective April 14, 2004.

¶12 The claimant filed a second petition to reopen this claim on February 28, 2014. The comparative dates for this petition are April 14, 2004, the date of the last closure, and February 28, 2014, the date the petition to reopen was filed. The ALJ heard testimony regarding the claimant's cervical spine from orthopedic surgeons Erik Bendiks, M.D., and Dennis Crandall, M.D. He resolved any conflicts in favor of Dr. Crandall.

¶13 It was Dr. Crandall's opinion that the claimant had mild arthritic changes that were causally related to his earlier surgery. But he testified that the claimant does not require surgery or other active medical care. Instead, the doctor recommended a supportive care award to monitor the arthritic changes, to provide anti-inflammatory medications, and to get an MRI if the symptoms worsen. Dr. Crandall's testimony reasonably supports the ALJ's denial of reopening and award of supportive care.

III.    LUMBAR INJURY

¶14 On September 6, 1998, the claimant complained of "[low] back sciatica — over use injury from football." He filed a workers' compensation claim, which was accepted for benefits. The claimant was again referred to Dr. Sonntag, who diagnosed a herniated disc. On September 29, 1998, Dr. Sonntag performed a left-sided L5-S1 microdiscectomy. In January 1999, this claim closed with no permanent impairment, and in July 1999, the claimant passed his pre-season physical for training camp without restrictions.

¶15 On April 12, 2004, the claimant filed his first petition to reopen his lumbar claim. It was denied for benefits, but the parties entered into a compromise and settlement agreement which reopened the claim and awarded the claimant a 13% whole person impairment and a lump sum payment of $10,000. The claim was reclosed effective April 14, 2004.

¶16     The claimant filed a second petition to reopen this claim on May 21, 2014. The comparative dates for this petition are April 14, 2004, the effective date of the last closure, and May 21, 2014, the date the petition to reopen was filed. The ALJ heard testimony regarding the claimant's lumbar spine from orthopedic surgeons, Drs. Bendiks and Crandall. He resolved conflicts in the testimony in favor of Dr. Crandall.

¶17     It was Dr. Crandall's opinion that the claimant had developed severe foraminal stenosis at L5-S1, where he had the discectomy, and that the industrial injury had accelerated the arthritis at that level. But neither he nor Dr. Bendiks recommended surgery or other medical care. Instead, they both recommended a form of supportive care.[3] Dr. Crawford stated that this should consist of three office visits per year with the claimant's medical provider, anti-inflammatory and nerve pain medications, and an additional MRI if his symptoms change. Dr. Crandall's testimony reasonably supports the ALJ's denial of reopening and award of supportive care.

IV.     RIGHT-KNEE INJURY

¶18     The claimant sustained a right-knee injury on August 18, 2000. He did not file a workers' compensation claim, but Zenith's predecessor issued a notice of claim status ("NCS") accepting and closing the claim with no permanent impairment. The ICA wrote to the claimant informing him that he did not have a claim on file and must file one within a year of the injury, but the claimant never filed a claim.

¶19     The claimant filed a petition to reopen this claim, which was denied. Before the first hearing, Zenith asserted that the ICA lacked jurisdiction to consider the petition to reopen because the claimant had never filed a workers' compensation claim for a right-knee injury. The ALJ determined that the claimant justifiably relied on the NCS accepting his claim, and Zenith was estopped from raising any jurisdictional issue with regard to the original filing.

¶20     We first address the jurisdictional issue. A.R.S. § 23-1061(A) provides that "no claim for compensation shall be valid or enforceable

---

[3]     The claimant argued that his claim should have been reopened to award him the increased permanent impairment (29%) found by Dr. Bendiks. But the doctor was unable to definitively attribute the increased impairment to the claimant's football-related activities rather than his genetics. The ALJ reasonably rejected his opinion.

unless the claim is filed with the commission by the employee . . . in writing within one year after the injury occurred or the right thereto accrued." This court repeatedly has held that the ICA does not acquire jurisdiction over a workers' compensation claim until a formal claim for benefits has been filed. *See Noble v. Indus. Comm'n*, 140 Ariz. 571, 574 (App. 1984); *Fed Mart v. Indus. Comm'n*, 135 Ariz. 533, 536 (App. 1982); *Sun Control Tile v. Indus. Comm'n*, 117 Ariz. 268, 270 (App. 1977). Issues of jurisdiction cannot be waived and may be raised at any time. *Van Sickle v. Indus. Comm'n*, 121 Ariz. 115, 117 (App. 1978). For these reasons, we hold that the ALJ erred by considering the claimant's petition to reopen his right-knee-injury claim.

**¶21**        However, we will affirm an ALJ's award if it reaches the right result, although for the wrong reason. *ITT Courier v. Indus. Comm'n*, 141 Ariz. 357, 360 (App. 1984). Because the ALJ denied the petition to reopen the right-knee claim, the procedural error did does not change the result of this case.

## V.        MENTAL INJURIES

**¶22**         Four of the five petitions to reopen included an additional claim for psychological harm. The only one that did not is the February 3, 2014 petition to reopen the cervical injury. With regard to psychological injuries, the ALJ heard testimony from Daniel Bowman, Ph.D., and Lauren Dawson, Ph.D. He resolved conflicts in the testimony in favor of Dr. Dawson.

**¶23**        In this case, Dr. Dawson interviewed and tested the claimant for ten hours over a two-day period. She conducted an extensive clinical interview, reviewed voluminous medical records, and administered a series of standardized tests all of which are summarized in her lengthy report. Based on this information, Dr. Dawson testified that the claimant's alcohol abuse was variably disrupting his cognitive skills and exacerbating any underlying mood disorder, but that he had no psychopathology related to the industrial injuries nor any new, additional, or previously undiscovered psychological condition related to the industrial injuries.

**¶24**        The claimant argues that Dr. Dawson's testimony is foundationally deficient and cannot support the award. Medical opinions must be based on findings of medical fact. *See Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973). These findings come from the claimant's history, medical records, diagnostic tests, and examinations. *See id*. "Many factors enter into a resolution of conflicting evidence, including whether or not the testimony is speculative, consideration of the diagnostic

method used, qualifications and backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred." *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988).

¶25        Specifically, the claimant argues that Dr. Dawson erroneously premised her opinion on his having successfully worked between 2000 and 2009, when he was shot four times and required a number of corrective surgeries. In that regard, the evidence demonstrated that the claimant was released by the Arizona Cardinals in 2000. He then purchased a franchise restaurant, which he ran for three years, and returned to college, finishing his bachelor's degree. He next worked concurrently as a health and physical education teacher and coach and as a crisis intervention specialist with teens.

¶26        Sometime later, the claimant was shot three or four times, in the right arm, right hip, and right foot. The claimant testified that although he recovered from his gunshot wounds, he voluntarily retired at that time, and that he had quit working before the gunshot wounds because his body was deteriorating. The claimant also argued that Dr. Dawson incorrectly emphasized his excessive alcohol use, which did not occur until after he sustained his physical "injuries with the Cardinals." In that regard, the claimant testified that he had a DUI arrest in 1997, for which he served jail time and underwent a three year NFL mandated counseling program with a Scottsdale psychologist.

¶27        Based on the claimant's own testimony, we cannot say that Dr. Dawson's opinion is so foundationally flawed that it is insufficient to support the ALJ's award denying the claimant's petitions to reopen for psychological injuries. *See Desert Insulations v. Indus. Comm'n*, 134 Ariz. 148, 151 (App. 1982) (recognizing that medical testimony can be so weakened by proof of an inaccurate factual background that it cannot be substantial evidence supporting an award but noting that not every factual inaccuracy will undermine the sufficiency of the opinion).

VI.    CUMULATIVE TRAUMA CLAIMS

¶28        The claimant argues that pursuant to A.R.S. § 23-1061(L), the ALJ should have allowed him to litigate his two new cumulative trauma claims that he filed on August 20, 2015, over seven months after the hearing process began on his five petitions to reopen and after five of the seven hearings had already been conducted. The statute provides:

> Upon application to the commission, and for good cause shown, the commission may direct that a document filed as a

claim for compensation benefits be designated as a petition to reopen, effective as of the original date of filing. *In like manner upon application and good cause shown, the commission may direct that a document filed as a petition to reopen be designated a claim for compensation benefits, effective as of the original filing.*

(Emphasis added.)

**¶29**        The claimant argues that the good cause for his newly filed trauma claims is found in Dr. Shapiro's hearing testimony given on August 12, 2015. The difficulty with this position is that this same evidence was contained in Dr. Shapiro's September 10, 2014 IME report, which was filed on September 16, 2014, almost a year before the claimant filed his new claims. Given the procedural posture of this case at the time the new claims were filed, we cannot say that the ALJ abused his discretion by referring the claims to the ICA for administrative processing.

## CONCLUSION

**¶30**        For all of the foregoing reasons, we affirm the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED:  AA