551 P.2d 82

Robert PAYTON, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

American Smelting and Refining Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA-IC 1313.

Court of Appeals of Arizona, Division 1, Department C.

June 22, 1976.

Rehearing Denied July 27, 1976.

Review Denied Sept. 9, 1976.

Rabinovitz, Minker & Dix, P. C. by Bernard I. Rabinovitz, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

## OPINION

HAIRE, Chief Judge.

On this review of an award entered by the respondent Commission's hearing officer in a workmen's compensation proceeding, the petitioner contends that the hearing officer erred in denying petitioner's claim for certain temporary compensation benefits.

Petitioner received an industrially-related injury to his right knee on July 19, 1972. His claim was initially denied as non-compensable by the respondent carrier. However, after hearing, the Commission's hearing officer entered his decision and award finding that the petitioner had sustained a compensable injury within the meaning of the workmen's compensation law, and that from July 19, 1972 until such time as petitioner's condition referable to the industrial injury became stationary, he would be on a temporary disability status and entitled to compensation for temporary total and /or temporary partial disability during said period, as provided by A.R.S. § 23–1045A and A.R.S. § 23–1044A. Because of the injury, petitioner was not able to work from July 19, 1972, until August 29, 1972, when he returned to full time employment with the respondent

employer. Pursuant to the hearing officer's award, petitioner was paid appropriate temporary total disability compensation by the respondent carrier for the above period of time. After August 29, 1972, petitioner, although suffering from discomfort with his knee, was able to work full time until he was injured in an unrelated nonindustrial accident some ten months later on July 8, 1973. This accident occurred when he slipped and fell on the rainslicked floor of a convenience market, sustaining a fracture of his tailbone and rather severe additional injuries to his right knee. Following this latter injury, surgery was performed on petitioner's knee, and since the performance of that surgery he has been unable to work.

On June 12, 1974, the respondent carrier issued a notice of claim status stating:

> "Claimant disabled for work since 7–8–73 as the result of non-industrial injury when he slipped and fell at Qwick Mart No. 2 store."

This did not amount to a discontinuance of the payment of temporary compensation benefits to petitioner, inasmuch as the respondent carrier had not been paying compensation benefits to petitioner for any period subsequent to August 28, 1972, petitioner having returned to full time employment at that date.

On July 3, 1974, petitioner filed his request for hearing stating as the basis for his request that:

> "The applicant is disabled for work since July 8, 1973, as the result of the industrial injury in question *and an injury sustained on July 8, 1973 at Quik Mart.*" (Emphasis added).

Hearings were subsequently held at which petitioner and his doctor testified. There was no conflict in the medical testimony, which the hearing officer summarizes as follows:

> "3. On July 8, 1973, the applicant in a non-industrial and unrelated episode, slipped and fell, sustaining further and more severe injury to the right knee;

that because of the extent and the severity of the injury sustained in the non-industrial unrelated episode, Dr. Toll operated on the applicant's knee on July 26, 1973, performing 'a repair of the medial collateral ligament, the posterior capsule and ligaments of the joint, and a pes anserina-plasty,' as well as removing a chronically torn meniscus.

> "4. Dr. Toll testified that the applicant's industrial injury to his right knee was not medically stationary at the time of the non-industrial unrelated slip and fall episode of July 8, 1973; that had the applicant not sustained the injuries of July 8, 1973, he would have had to undergo a surgical operation on his right knee because of the industrial injury of July 19, 1972 at some undetermined time in the future; Dr. Toll further testified that the non-industrial unrelated fall of July 8, 1973 extended or made worse the tear of the meniscus heretofore sustained on July 19, 1972; it was Dr. Toll's opinion based on a reasonable degree of medical probability, that the present disability of the applicant was due to the non-industrial unrelated slip and fall episode of July 8, 1973; Dr. Toll testified further that the average percentage of disability of an individual who undergoes an uneventful surgical operation or procedure such as a medial meniscectomy is 10% functional disability of the affected leg as well as six to eight weeks convalescence."

Based upon these facts, the hearing officer concluded that petitioner's knee injury was not stationary following his release to regular work status on August 29, 1972, and that therefore subsequent to that time he had remained on a temporary disability status entitled to benefits as provided by law, (A.R.S. § 23–1044A), but that although so considered,

> "There has been no showing that the time lost from work following July 8, 1973, was due to his industrial injury of July 19, 1972, nor has there been any evidence to show that the reduction in

earning capacity, if any, following July 8, 1973, was due to the industrial episode of July 19, 1972."

Accordingly, the hearing officer's award was that the petitioner take nothing by reason of his request for hearing.

■ On this review petitioner points to the fact that although he was working full time prior to the time of the second injury, the medical evidence shows that even without the second injury, at some future time surgery would have been required because of the prior industrial injury to his knee; that said surgery probably would have resulted in six to eight weeks of total temporary disability, and a 10% scheduled permanent disability of the leg. From this he concludes that his disability after the nonindustrial injury on July 8, 1973, was the result of the concurring causes and should be apportioned, citing *Employers Mutual Liability Insurance Co. of Wisconsin v. Hazelton*, 17 Ariz.App. 516, 498 P.2d 590 (1972). The difficulty with this contention is that there is no evidence which would support a finding that any part of petitioner's post-July 8, 1973 disability was actually caused by the prior industrial injury. He was working full time immediately prior to the injury, and the only medical testimony, which came from petitioner's own doctor, was that his post-July 8, 1973 disability was due to the nonindustrial injury. Thus, here we do not have a situation involving apportionment of an earning capacity disability resulting from two different conditions or injuries. There is no testimony which would support an argument that the prior industrial injury so weakened petitioner's knee so as to cause the July 8, 1973 fall or subsequent knee injury. *See Carabetta v. Industrial Commission*, 12 Ariz.App. 239, 469 P.2d 473 (1970). In the final analysis, it appears that as a result of his industrial injury petitioner had a potential claim, which because of the occurrence of the second injury, never materialized. Based upon the evidence presented, his inability to work after July 8, 1973, was caused entirely by the second injury.

In additional support of his argument for apportionment, petitioner refers to the medical testimony to the effect that, in the absence of the second injury, and, assuming an uneventful surgery for the industrial injury and normal recovery therefrom, he would have been left with a 10% permanent impairment of his leg. He argues that:

"This evidence appears to clearly indicate the point of departure as to apportionment of the total disability following the surgery."

We disagree. The testimony relating to a potential 10% impairment of the leg was only an estimate of what petitioner's *permanent* functional impairment of the leg might eventually have been. Here, there was no question of permanent disability benefits before the hearing officer. Petitioner is still in a temporary disability status, and the determination of entitlement to permanent disability benefits remains for the future. Further, even if this were not the case, the testimony concerning this potential 10% impairment of function of the leg cannot be considered as supplying causation testimony relating petitioner's industrial injury to his post-surgery total temporary disability, especially in view of the medical testimony which states that his post-surgery disability was due to the nonindustrial injury.

■ Separate and apart from the foregoing, petitioner complains that:

"The [respondent carrier] stopped paying compensation without an award, and has, in effect, never terminated the petitioner's temporary disability status which has continued, sans benefits."

If it is petitioner's contention that by refusing to pay compensation benefits relating to the disability emanating from the July 8, 1973, non-industrial injury, the respondent carrier somehow violated the Commission's decision and award of April

12, 1973, we disagree. The April 12, 1973 award merely entitled petitioner to such temporary disability benefits as might thereafter accrue as the result of his industrial injury. As we have previously noted in this opinion, his diability after July 8, 1973, was not a result of the industrial injury and therefore the carrier's refusal to pay was not in violation of, or a change from, the prior award.

We do not believe that the Commission's Rule 18(a) requires a different result under the facts of this case. Rule 18(a) provides as follows:

> "(a) Where there has been a notice of claim status issued, which has become final, accepting a claim for benefits, any subsequent notice of claim status which changes the claimant's amount of or entitlement to compensation or medical, surgical or hospital benefits, shall not have retroactive effect for more than thirty (30) days from the date of issuance of such notice of claim status unless the subsequent notice affects the entitlement to or amount of death benefits."

Petitioner appears to contend that, by refusing to pay temporary disability compensation following the non-industrial injury of July 8, 1973, the carrier somehow *changed* the claimant's amount of or entitlement to compensation benefits, and because no notice of claim status was then issued to accomplish this change, the carrier is now required to pay temporary total disability compensation because of the 30 day retroactivity limitation of Rule 18(a). We reject this reasoning. Any change in the payment of temporary disability compensation by the carrier occurred prior to the July 8, 1973, non-industrial injury, and was occasioned by petitioner's return to full time employment ten months earlier on August 29, 1972. Thus no change was involved or occasioned by the carrier's refusal to pay temporary disability compensation following the July 8, 1973 non-industrial injury. If petitioner felt that he was entitled to a resumption of such benefits, a remedy was available to him pursuant to the provisions of A.R.S. § 23–1061J. However, as we have previously determined in this opinion, the facts here involved furnished adequate support for the hearing officer's determination that the carrier's refusal to pay was not in fact improper.

The award is affirmed.

EUBANK, P. J., and NELSON, J., concur.