698 P.2d 759

**WESTERN CABLE,**
**Petitioner Employer,**

**Travelers Insurance Company,**
**Petitioner Carrier,**

**v.**

**The INDUSTRIAL COMMISSION OF**
**ARIZONA, Respondent,**

**Jon T. Swanson, Respondent Employee.**

**No. 1 CA–IC 3216.**

Court of Appeals of Arizona,
Department C, Division 1.

April 11, 1985.

Law Offices of Christopher D.C. Hossack by JoAnn C. Gaffaney, Phoenix, for petitioners.

Sandra A. Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

John H. Budd, Jr., Phoenix, for respondent employee.

## OPINION

EUBANK, Judge.

This is a special action review of an Industrial Commission award for temporary total disability. The dispositive issue is whether a prior final award extending temporary disability status from January 26 to December 2, 1983 precludes a denial of temporary disability compensation during this period. Because preclusion is inapplicable, we set aside the award.

The respondent employee (claimant) first injured his right knee in a 1979 out-of-state industrial injury. This required surgery to remove a torn lateral meniscus and to repair ligaments. He was discharged in 1981 with a 30 percent permanent impairment. The claimant remained unemployed for approximately a year until he went to work laying cable for the petitioner employer. On June 15, 1982, he fell into a trench and twisted his right knee. The initial diagnosis was a right knee sprain with mild effusion (swelling).

The claim for benefits was accepted. Despite conservative treatment, the claimant's symptoms of lateral knee pain, swelling, and instability persisted. In October, 1982, treating physician William L. Smith, D.O., arthroscopically examined the knee. He found chronic synovitis (inflammatory changes to knee joint lining) and chondromalacia (roughening) of the patella but no additional meniscus tear. These chronic conditions were related to the 1979 industrial injury.

On December 16, 1982, Dr. Smith released the claimant to return to regular work. The petitioner carrier (Travelers) issued a December 22, 1982 notice of claim status changing the disability status from temporary total to temporary partial. According to the claimant, he attempted work after his release, but this aggravated his symptoms. Despite these continuing complaints, Dr. Smith discharged the claimant without permanent impairment on January 26, 1983. On February 2, 1983, Travelers issued a notice of claim status terminating all compensation effective January 26, 1983. The claimant timely protested, asserting that his injury permanently disabled him from working.

On April 11, 1983, the claimant saw orthopedic surgeon Dan Heller, M.D., who noted moderate lateral ligament instability. After this examination, the claimant again attempted to work but had the same aggravation of symptoms. On May 18, 1983, Dr. Heller observed a large effusion above the right knee. He recommended a second diagnostic arthroscopic examination, but left the claimant on regular work status: "If internal derangement symptoms were substantiated at time of arthroscopy, some correction might be made in the work status. From the information I have, I am afraid he would have to be left on work status."

At the first scheduled hearing in July, 1983, the claimant and Dr. Smith appeared. The claimant testified that he was able to work before the June 15, 1982 industrial injury but has been unable to work since the injury. He admitted that after the first injury he had some knee pain and wore a brace. He also testified that he had unsuccessfully applied for work as a truck driver.

Dr. Smith reiterated his opinion that the June 14, 1982 industrial injury had not caused permanent impairment. He attributed the claimant's ongoing complaints to the prior industrial injury.

Pending a scheduled continued hearing, Alfred F. Miller, M.D., who had previously examined the claimant at Travelers' request, reexamined him. On August 29, 1983, Dr. Miller performed a diagnostic arthroscopic examination, but he found no damage related to the June 15, 1982 industrial injury. Because of the surgery, however, the claimant was off work status

until September 12, 1983. After this recovery period, Dr. Miller again released him to regular work. On December 2, 1983, Dr. Miller discharged the claimant without permanent impairment.

At a continued hearing, Dr. Miller confirmed that the claimant was stationary without permanent impairment from the June 15, 1982 industrial injury. In his opinion, the claimant was capable of regular work except while recovering from surgery. He admitted, however, that until December 2, 1983, the claimant had effusion and some loss of knee range of motion. At another continued hearing, Dr. Heller also confirmed that he had observed effusion and instability, but he expressed no opinion about causation.

On December 30, 1983, the presiding administrative law judge issued an award for continuing temporary disability. The dispositive findings state:

8. Essentially the issue before the undersigned is a *medical issue* and it is well established in Arizona that, except where apparent to a layman, the existence of a disability and its relation to an industrial episode is solely within the realm of knowledge of medical experts.

\*　\*　\*　\*　\*　\*

12. All of the physicians agreed that the applicant's knee was stationary but there is a conflict as to when the applicant's knee became stationary.

\*　\*　\*　\*　\*　\*

14. The undersigned resolves the conflict by accepting the testimony of Dr. Miller as being the more reasonable based upon the fact that Dr. Miller observed swelling and loss of range of motion in the applicant's knee up to his examination of December 2, 1983.

15. The evidence establishes that the applicant's physical condition did not become stationary until December 2, 1983 and that as of that date the applicant had no permanent physical or mental impairment causally related to the June 15, 1982 injury. (Citations omitted. Emphasis added.)

Based on these findings, the award provided medical benefits and "[t]emporary total and/or temporary partial disability benefits as provided by law and consistent with the findings of this Award from and after June 15, 1982 up to and including December 2, 1983." Neither party requested administrative review and this award became final. *See* A.R.S. § 23–942(D).

In January, 1984, Travelers tendered temporary total compensation for the period of time when the claimant was recovering from Dr. Miller's arthroscopic surgery, but it denied any additional temporary compensation. The claimant asserted the right to full temporary total compensation and requested a hearing pursuant to A.R.S. § 23–1061(J), (1061(J) hearing). The matter was scheduled for hearing before another administrative law judge, but the parties agreed to a disposition of the matter upon the existing record. On April 20, 1984, the second administrative law judge issued the award for full temporary total compensation. The dispositive findings state:

9. Whatever issues were determined or could have been determined in the original findings and award of the Commission are res judicata the same as if they had been expressly determined by the original judgment of the Commission.

10. Even assuming arguendo that the defendant insurance carrier is correct in its argument that the evidence does not establish applicant's entitlement to temporary compensation, the defendant insurance carrier allowed the award of Judge Nicholls to become final without protest; the issue of applicant's entitlement to compensation was an issue at the hearings conducted by Judge Nicholls and the decision of December 30, 1983 found that applicant was entitled to temporary compensation until December 2, 1983; said award is final and res judicata as to the issue of applicant's entitlement to temporary compensation; the language of the award granting temporary compensation benefits "as provided by law" does not grant the right to the

insurance carrier to relitigate the issue, but simply leaves the arithmetical computation of the amount of benefits to the parties; this has been the custom and practice in industrial cases for years since in many cases the evidence may show the claimant's right to compensation benefits without showing the necessary figures upon which to make a computation of the exact dollars and cents amount and so it is left to the parties to make such a computation; to hold otherwise would allow an insurance carrier two opportunities to litigate the same issue.

11. The record shows that the applicant has not worked and earned any wages between January 26, 1983 and December 2, 1983, and accordingly applicant is entitled to temporary compensation benefits from January 26, 1983 to December 2, 1983 based upon 66⅔% of applicant's average monthly wage of $977.97 which computes to the total sum of $6,667.84. (Citations omitted).

The award was affirmed on administrative review, and this special action of Travelers followed.

On review, Travelers denies that preclusion applies because the December 30, 1983 award for continuing temporary disability made no findings that the claimant was actually disabled. The claimant answers that preclusion applies because actual disability was an issue that *could* have been determined in this initial award.

■ Resolution of this dispute turns on the distinction between claim preclusion and issue preclusion. *See Red Bluff Mines, Inc. v. Industrial Commission,* 144 Ariz. 199, 696 P.2d 1348 (App.1984) (*citing Restatement (Second) of Judgments* § 27 (1982)). Claim preclusion prohibits relitigation of the same *claim. Id.,* at 203, 696 P.2d at 1352. If the same claim is involved relitigation of matters that were actually

decided or that could have been decided is precluded. *Id.* In contrast issue preclusion only precludes relitigation of the same issue. *Id.,* at 205, 696 P.2d at 1354. It applies only to matters that were actually litigated and determined and only if that determination was essential. *Restatement (Second) of Judgments* § 27 (1982).

■ In the present case, issue preclusion does not apply. The December 30, 1983 award made no determination about the claimant's actual disability. Nor would this determination have been essential to the award. The only essential finding was that the claimant required continuing active medical treatment from January 26, 1983 to December 2, 1983. *See, e.g., Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975).

■ The decisive question, therefore, is whether claim preclusion applies to this case. We conclude that it does not, since the claim asserted by claimant was one for an award based on disability. A determination that an industrial injury is not yet stationary is a prerequisite for temporary disability. *See Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. at 93, 530 P.2d at 1126; *cf. Hunter v. Industrial Commission,* 130 Ariz. 59, 633 P.2d 1052 (App.1981) (permanent impairment, a medical question of fact, is prerequisite to assessment of permanent disability). But satisfaction of this prerequisite alone does not guarantee an award for temporary disability. This depends on the industrial injury's actual effect on the claimant's earning capacity. *See Felker v. Industrial Commission,* 134 Ariz. 19, 653 P.2d 369 (App. 1982);[1] *Payton v. Industrial Commission,* 27 Ariz.App. 92, 551 P.2d 82 (1976); *Hardware Mutual Casualty Co. v. Industrial Commission,* 17 Ariz.App. 7, 494 P.2d 1353 (1972); *State Compensation Fund v. Cramer,* 13 Ariz.App. 103, 474 P.2d 462

---

**1.** *Felker* is directly on point. Although it involves penalty benefits, the point of the case is that the measure of the penalty under A.R.S. § 23–1061(M) is the compensation payable as if the claim had been accepted. *Felker v. Industri-* *al Commission,* 134 Ariz. at 20, 653 P.2d at 370; *accord Kentucky Fried Chicken v. Industrial Commission,* 141 Ariz. 561, 688 P.2d 187 (App. 1984).

(1970).[2] Accordingly, a determination, such as the one made by the Administrative Law Judge in his December 30, 1983 award, that an industrial injury is not stationary does not imply that the condition was disabling during the period of medical instability. Establishing disability through proof of an impairment of earning power is necessary to support an award of disability benefits. *Edwards v. Industrial Commission*, 3 Ariz.App. 290, 413 P.2d 800 (1966). *See also Continental Casualty Co. v. Industrial Commission*, 21 Ariz.App. 561, 521 P.2d 1019 (1974). Therefore, in view of the limited scope of the December 30, 1983 award, Travelers was not precluded from denying temporary disability benefits. The claimant's right to such benefits had never been litigated.

 The claimant asserts that we may nevertheless affirm the award because sufficient evidence of actual disability supports it. We disagree. Although we may affirm an award that is right for the wrong reason, this requires findings of the critical facts. *See State Compensation Fund v. Industrial Commission*, 136 Ariz. 442, 666 P.2d 542 (App.1983). Here, the award lacks any finding about the claimant's actual earning capacity. Even if the claimant was unable to return to heavy physical work, his interim earning capacity must still be assessed.

 Respondent argues that a 1061(J) hearing may not be used as a forum to collaterally attack a prior award. We agree. The Supreme Court in *Massie v. Industrial Commission*, 113 Ariz. 101, 546 P.2d 1132 (1976), noted that "the purpose of A.R.S. § 23–1061(J) is not to permit collateral attacks on the findings, orders, or awards of the Industrial Commission." However, that statement is inapposite here because, as discussed supra, the carrier was not, in the 1061(J) proceedings, attacking the determination of the claimant's stationary date. The carrier was contending that no disability was proven. This is a separate and different issue.

Since the parties stipulated to use of the record of the initial hearing in the 1061(J) hearing and since there was no additional evidence introduced regarding claimant's disability, the Administrative Law Judge was free to make a determination, based on the stipulated record, that there was no showing of disability. Therefore his determination that "the issue of applicant's entitlement to compensation was an issue at the hearings conducted by Judge Nicholls and the decision of December 30, 1983 found that applicant was entitled to temporary compensation until December 2, 1983; said award is final and res judicata as to the issue of applicant's entitlement to temporary compensation ..." was erroneous. As noted above, no such finding of entitlement was made in the initial hearing. Only a determination of a *medical issue*, i.e. whether claimant was stationary, was made.

 The Commission's grant of a 1061(J) hearing is in no way a determination of the merits of a claimant's claim to compensation. The 1061(J) hearing only indicates the Commission's initial determination that the claimant has a colorable claim to compensation, that is that the claimant has "any claim in which it *appears* to the commission that the claimant has not been granted the benefits to which such claimant is entitled." A.R.S. § 23–1061(J). The appearance of entitlement is certainly not the same thing as the fact of entitlement. It may appear that one is entitled to compensation when in fact he or she is not. It is the purpose of the 1061(J) hearing to determine the fact of entitlement to compensation as well as whether the "payment or denial of compensation is improper," where no such finding had been made previously. A 1061(J) hearing is not merely a means to enforce the payment of compensation which is due but it is also a means by which the fact of entitlement,

---

**2.** The current administrative law judge apparently concluded that A.R.S. § 23–1044(A) does not require a showing of actual lost earning capacity during temporary disability. This is error. *See* 2 Larson, *Workmen's Compensation Law* § 57.21 at 10–72 to –75 (1983).

and its exact measure, may be litigated. Once the 1061(J) hearing was set, the question of temporary disability benefits was at issue, and it was therefore error for the Administrative Law Judge to rule that that question was precluded by the findings made in the initial hearing.

Respondent also contends that petitioner's special action was frivolous and filed solely for purpose of delay and, therefore, requests that we award him attorney's fees incurred here pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure. Since we have set the award aside, we decline to award attorney's fees to respondent.

For the foregoing reason, the award is set aside.

CONTRERAS, P.J., and BROOKS, J., concur.