NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROXANNE MILLIRON, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

FEDEX GROUND PACKAGE SYSTEM, INC., *Respondent Employer*,

SEDGWICK, *Respondent Carrier*.

No. 1 CA-IC 18-0002
FILED 10-23-2018

Special Action - Industrial Commission
ICA Claim No. 20163-260280
Carrier Claim No. 30166533757-0001

C. Andrew Campbell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Arizona Injury Law Group, PLLC, Phoenix
By Briana E. Chua
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent Industrial Commission of Arizona*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Gregory L. Folger, Jennifer B. Anderson, Sean M. Moore
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

**¶1**　　　　This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying temporary partial disability benefits to the petitioner employee, Roxanne Milliron ("Claimant").  The administrative law judge ("ALJ") resolved the issues in favor of the respondent employer, FedEx Ground Package System, Inc. ("FedEx") and the respondent carrier, Sedgwick CMS, Inc. ("Sedgwick"). One issue is presented on appeal: whether the ALJ abused his discretion by denying Claimant temporary partial disability benefits.  Because we find no abuse of discretion, we affirm the award and decision upon review.

**STANDARD OF REVIEW**

**¶2**　　　　In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review *de novo* questions of law.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003).  We consider the evidence in the light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**FACTS AND PROCEDURAL HISTORY**

**¶3**　　　　Claimant worked as a package handler for FedEx.  On September 13, 2016, she was unloading boxes inside a semi-trailer when a wall of boxes fell and a seventy-pound box struck her left elbow.  She filed a workers' compensation claim, and Sedgwick accepted the claim for medical benefits only, with no time lost from work.  Claimant timely protested and requested an ICA hearing, asserting she had lost time from work and was entitled to temporary disability benefits.

2

¶4	The ALJ subsequently held four hearings and heard testimony from Claimant; treating physician Kraig Burgess, D.O.; independent medical examiner John D. Hayden, Jr., M.D.; and vocational rehabilitation consultant Lawrence J. Mayer. The ALJ also reviewed medical reports from Atul Patel, M.D., and Jerome J. Grove, M.D.

¶5	Claimant testified she returned to work the next day—September 14, 2016—but when she tried to work, her left arm hurt and became swollen. She saw her primary care doctor, and he took her off work until she could see Dr. Burgess. On September 21, 2016, Dr. Burgess examined her, began treatment, and ordered an MRI. He also released her for light duty work with a restriction against using her left arm.

¶6	On September 22, 2016, Claimant returned to FedEx with Dr. Burgess' work restrictions. She testified that, later that day, her supervisor contacted her and offered her "a job sorting the trash." When she contacted the human resources department, she was told sorting recyclables was on FedEx's "list for light duty."

¶7	Claimant refused to try the light work and instead went on a "leave of absence" beginning September 23, 2016. She testified she did not believe she could perform the offered work, because it would require both arms to remove the trash can lids. She further testified she believed her supervisor was upset with her for getting injured, and he had intentionally offered her demeaning work.

¶8	Dr. Burgess, a board certified orthopedic surgeon, fellowship trained in hand and upper extremity surgery, first saw Claimant on September 21, 2016, for left elbow pain that, by history, started after she was struck on the arm with a heavy box. Dr. Burgess diagnosed an elbow contusion, recommended and began conservative treatment, and released Claimant to return to light work with no use of her left arm. When asked about the suitability of light duty work sorting recyclables, the doctor stated that, not knowing the type of trash cans or trash involved, he could speculate that removing trash can lids would require both hands but sorting trash would only require one hand.

¶9	When conservative treatment did not result in an improvement in Claimant's complaints, Dr. Burgess obtained an MRI. The MRI revealed an "acute appearing high grade partial tear of the extensor carpi radialis brevis and common extensor tendon origin with the underlying tendinosis and a superimposed partial tear." The doctor opined

that Claimant's condition was causally related to the industrial injury and required surgical treatment.

¶10　　　Dr. Hayden testified that he is fellowship trained in orthopedic, hand, and microvascular surgery, and he limits his practice to "independent medical evaluations, evaluations for personal injury cases, and second opinions." He examined Claimant, reviewed her medical records, and authored a report with several addendums. Dr. Hayden opined that Claimant has no diagnosable condition related to her industrial injury and that she is stationary with no permanent impairment or industrially related work restrictions.

¶11　　　Mr. Mayer reviewed medical records, depositions, and ICA records for his labor market report on Claimant. Based on Claimant's inability to use her left upper extremity, he found that positions as a gate attendant and parking lot cashier were both suitable and reasonably available and would result in a monthly entitlement of $328 to $389 in temporary disability benefits. He also testified that, based on "file documentation," FedEx offered Claimant a position within her medical restrictions separating garbage from recyclables that would result in no loss of earnings. On cross-examination, he agreed that, not having seen what the FedEx job entailed, he could not state whether it was "appropriate."

¶12　　　After the hearings, the ALJ entered an award denying Claimant temporary disability benefits. The ALJ found as follows:

> The [FedEx] offer of employment within her restrictions that if accepted would have resulted in [Claimant] receiving her regular wages precludes [Claimant] from receiving temporary disability compensation benefits in this matter.

Claimant timely requested administrative review, but the ALJ issued his decision upon review summarily affirming the award. Claimant filed a timely petition for special action, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2016) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## ANALYSIS

¶13　　　On appeal, Claimant argues the ALJ abused his discretion by relying on FedEx's light duty job to deny her an award of temporary partial

disability benefits. Temporary disability benefits are paid based on "the difference between the wages earned before the injury and the wages that the injured person is able to earn thereafter." A.R.S. § 23-1044(A) (Supp. 2017).

¶14 The right to temporary disability benefits is established through proof of a loss of earning capacity ("LEC"). *See W. Cable v. Indus. Comm'n*, 144 Ariz. 514, 519 n.2 (App. 1985). This requires evidence of employment that is both suitable for and reasonably available to the claimant. *See Germany v. Indus. Comm'n*, 20 Ariz. App. 576, 580 (1973). The burden of proving a LEC is on the claimant. *See, e.g., Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983).

¶15 In that regard, a claimant has an affirmative burden to establish his inability to return to date-of-injury employment and either to make a good faith effort to obtain other suitable employment or to present testimony from a labor market expert to establish his earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266 (App. 1986). If there is testimony that a claimant made reasonable efforts to obtain other suitable employment but was unsuccessful, the burden of going forward with contrary evidence to establish the availability of suitable employment shifts to the employer and carrier. *See, e.g., Zimmerman*, 137 Ariz. at 580.

¶16 Claimant argues the FedEx job would have required her to use both her arms, which was inconsistent with Dr. Burgess' medical restrictions precluding the use of her left arm. She asserts Dr. Burgess' testimony supports this argument, and because Dr. Hayden did not address this point, Dr. Burgess' testimony is uncontroverted.

¶17 When expert medical testimony conflicts, it is the ALJ's duty to resolve those conflicts. *See Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975). But when medical opinions are uncontroverted and based on matters peculiarly within the realm of medical knowledge, they are binding on the ALJ. *Cammeron v. Indus. Comm'n*, 98 Ariz. 366, 370 (1965).

¶18 In this case, Dr. Hayden testified that Claimant had no industrially related physical limitations or medical restrictions that would preclude her from performing her date-of-injury employment. Conversely, Dr. Burgess testified that Claimant could not use her left arm for work. Regarding the FedEx light duty work, Dr. Burgess stated:

> *I'm not sure what type of trash can it is*, but I think that
> removing or unsnapping lids off of large trash cans is likely a
> two handed job. . . . I could *speculate* the trash can lid is likely
> a two hand position.

(Emphasis added.)

**¶19**      Claimant never attempted to perform the offered light work, so it is unclear from the record whether the job she observed the cleaning people perform was the same job she was offered. *See Hoffman v. Brophy*, 61 Ariz. 307, 314 (1944) (recognizing that a claimant has a duty to mitigate damages by minimizing the loss of earnings). The record does not support a conclusion that uncontroverted medical testimony established the FedEx job was unsuitable for Claimant.

**¶20**      Claimant argues that Mr. Mayer, Sedgwick's labor market expert, deferred to the medical experts regarding the suitability of the light work FedEx offered her. Based on that concession, she argues the ALJ remains bound by Dr. Burgess' uncontroverted opinion. As we have recognized, however, Dr. Burgess' opinion was based on speculation and its premise—that Claimant could not use her left arm for work—was controverted by Dr. Hayden's testimony. Regarding Mr. Mayer's testimony, we agree he deferred to the medical experts, but we disagree this concession is dispositive.

> [W]hile the employment expert may bring to the trier of fact his expertise in this area (which makes his opinion admissible) this type of evidence is not so completely outside the understanding of the average layman, that a contrary conclusion cannot be reached. As with most expert opinions, the trier of fact is entitled to consider it, but give it only the weight to which he deems it is entitled.

*Le Duc v. Indus. Comm'n*, 116 Ariz. 95, 98 (App. 1977).

**¶21**      Citing *Doles v. Industrial Commission*, 167 Ariz. 604 (App. 1990), Claimant last argues that requiring her to perform the light duty offered by FedEx is akin to making her a "captive disabled employee." In *Doles*, this court addressed the issue that sheltered employment is a job given to a permanently disabled worker that is not available in the competitive labor market. *See id.* at 606-09. Sheltered employment does not accurately represent a claimant's earning capacity in the competitive labor market and results in captive employment because an injured worker must

continue working for that employer or face a reduced wage in the competitive market. *See id.* at 607-08.

¶22 This case is at the temporary disability benefits stage. Claimant testified that, after she rejected the FedEx light duty work, she sought and obtained other work, albeit outside Dr. Burgess' recommended limitations. Mr. Mayer testified there is suitable and reasonably available employment in the open labor market within Claimant's physical limitations. For these reasons, we find *Doles* distinguishable.

**CONCLUSION**

¶23 For all the foregoing reasons, we affirm the award and decision upon review denying Claimant's request for temporary partial disability benefits.



AMY M. WOOD • Clerk of the Court
FILED:  AA